UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENNETH L., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO. C17-5962-JPD <br><br><br> ORDER AFFIRMING THE COMMISSIONER |

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court ORDERS that the Commissioner's decision be AFFIRMED.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-nine-year-old man with a high school education as well as a two-year college degree in engineering/surveying. Administrative Record ("AR") at 217-18. His past work experience includes employment as a

ORDER - 1

survey assistant with the City of Tacoma, Public Works Department, for approximately twenty years.  AR at 218.  Plaintiff was last gainfully employed in February 2013.  AR at 216.

On December 3, 2013, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of February 21, 2013.  AR at 97, 216.  During the administrative hearing, however, he amended his alleged onset date to January 1, 2014.  AR at 97, 216.  Plaintiff asserts that he is disabled due to bilateral shoulder impairments, bipolar disorder, schizoaffective disorder, and a history of alcohol abuse.  AR at 216.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 97.  Plaintiff requested a hearing, which took place on August 17, 2015.   AR at 211-49.  On June 13, 2016, the ALJ issued a decision finding plaintiff not disabled at step two and denied benefits based on her finding that plaintiff has no impairments that significantly limited his ability to perform basic work-related activities for twelve consecutive months.  AR at 99.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On November 30, 2017, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 4.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence"  is more than a scintilla, less than a preponderance, and is

ORDER - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

ORDER - 3

423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On June 13, 2016, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since February 21, 2013, the alleged onset date.

3. The claimant has the following medically determinable impairments: an affective disorder and a history of shoulder surgery.

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments.

5. The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2013, through the date of this decision.

AR at 99-108.

# VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence?
2. Did the ALJ err in evaluating plaintiff's credibility?
3. Did the ALJ err in evaluating the lay evidence?
4. Did the ALJ properly determine that plaintiff has no severe impairment at step two?
5. Does the new evidence submitted to the Appeals Council support reversal?

Dkt. 12 at 1; Dkt. 13 at 1-2.

# VII. DISCUSSION

## A. The ALJ Did Not Err at Step Two

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th

Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

Here, the ALJ acknowledged that plaintiff's affective disorder was a medically determinable mental impairment at step two. AR at 99. However, the ALJ considered whether plaintiff's mental impairment significantly limited his mental ability to do basic work activities. AR at 99-108. The ALJ ultimately determined that plaintiff's affective disorder did not cause more than minimal limitation in his ability to perform basic mental work activities, and was therefore non-severe. AR at 99-108. As part of the ALJ's step two discussion, she discussed the medical opinion evidence as well as the weight she afforded to plaintiff's testimony regarding his symptoms.[2] The ALJ held that plaintiff has no limitations in activities of daily living, as he maintains an active lifestyle including the ability to play with his children, perform household chores, do yard work and home maintenance projects, drive, go to fast food restaurants, sell items for cash on Ebay and Craigslist, and barbecue. AR at 104. The ALJ found that plaintiff has only mild limitations in social functioning, as he does not consistently maintain good eye contact but repeatedly displayed euthymic mood and affect. AR at 104. The ALJ further found that plaintiff's improvement with medication, coupled with the positive mental status examination findings in the record, suggest that he has no more than mild limitations in maintaining concentration, persistence, or pace. AR at 104. Finally, the ALJ found no episodes of decompensation. AR at 105.

The ALJ supported her step two analysis by adopting the medical opinions of two State agency physicians, John Robinson, Ph.D. and Cynthia Collingwood, Ph.D. AR at 104-05, 261,

---

[2] The ALJ evaluated plaintiff's mental health symptoms using the "special technique" set forth in 20 C.F.R. §§ 404.1520a, 416.920a that requires the ALJ to consider four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. A mental impairment is not severe if it results in no more than mild limitations in the first three functional areas and none in the fourth.

ORDER - 7

287, 299. Both non-reviewing physicians reviewed the record evidence and reached similar conclusions regarding plaintiff's functioning in the four functional areas.

Plaintiff does not directly challenge the ALJ's findings under the special technique, but broadly asserts that the ALJ erred by giving too much weight to the opinions of non-examining physicians Drs. Robinson and Collingwood rather than the opinions of examining sources Drs. Lemberg and Widlan. Dkt. 12 at 2-5, 8-9. As discussed below, this is an unusual case in which the ALJ reasonably afforded greater weight to the opinions of the non-examining physicians.

### 1. Drs. Lemberg and Widlan

On March 10, 2014, Mary Lemberg, M.D., a psychiatrist, performed a consultative examination of the plaintiff. Plaintiff reported that he had previously attempted suicide by trying to hang himself three to four years prior. AR at 915. Plaintiff reported experiencing auditory hallucinations 3-4 times per week. AR at 917. He said that he believed his wife and mother were trying to poison him. AR at 917. On mental status examination, Dr. Lemberg found that plaintiff's attitude/behavior were blunted and unfocused, he maintained a worried, furrowed brow throughout the interview, his psychomotor movements were slowed, though he fidgeted with his fingers, and his insight was very limited. AR at 917. She also found that he had latent, slowed speech with low tone, and his thought process was vague, with a paucity of content and poor short-term and long-term recall. AR at 917. Dr. Lemberg also found that his affect was blunted and unfocused, and he recalled only 1/3 objects after five minutes. AR at 918. Plaintiff reported that he spent his time isolated in his room and would sometimes watch TV and space out. AR at 918. He reported that his wife did the shopping because he felt "uncomfortable in the grocery store," and she did the chores because he could not focus or motivate himself to complete tasks. AR at 918-19. He reported having no friends, but he maintains contact with his mother who calls to check in on him. AR at 919.

Dr. Lemberg diagnosed Lehman with schizoaffective disorder, bipolar type; alcohol dependence in full sustained remission since 2011, and rule out anxiety disorder NOS; and rated his GAF at 30. AR at 919. Dr. Lemberg opined that plaintiff had the ability to perform simple and repetitive tasks, though not on a sustainable basis, and "he would have difficulty completing detailed and complex tasks, based upon his performance on the mental status exam and presentation today." AR at 920. She also opined that plaintiff could not appropriately adapt to new environments, "based on his history and mental status exam." AR at 920. Similarly, she concluded that he would have "difficulty retaining instructions from supervisors, and describes worsening and interfering psychotic symptoms towards the latter years of his employment." AR at 920. Dr. Lemberg concluded that he is incapable of work activities. AR at 920.

On July 29, 2015, David Widlan, Ph.D., performed a consultative examination of plaintiff. AR at 1050. Dr. Widlan reported that plaintiff "presented in severe distress. He exhibited severe agitation . . . very poor concentration associated with this. His affect was labile." AR at 1050. Plaintiff reported that he experiences auditory hallucinations "all the time," and significant paranoia. AR at 1050.

Dr. Widlan reported that plaintiff described severe depression and exuded a sense of hopelessness, and appeared agitated and vigilent. AR at 1051. Dr. Widlan noted that plaintiff performed very poorly on mental status examination tasks, and believed that his description of his symptoms was credible. AR at 1052. Dr. Widlan found that plaintiff exhibited significant psychosis associated with hallucinations and paranoia. AR at 1052. He opined that plaintiff struggled to follow the clinical interview and noted that he was disorganized. AR at 1052. For example, plaintiff was unable to remember any objects after a five minute lapse and that he barely was able to repeat 2 digits backward due to his level of agitation. AR at 1052. He found that plaintiff appeared to have deficits in insight and that he was not able to clearly deal with moderately novel stressors. AR at 1053. Dr. Widlan found that plaintiff was unable to complete

serial counting tasks and unable to spell "world" forward or backwards. AR at 1053. He found that plaintiff exhibited severe concentration deficits, he struggled to maintain focus, and he responded with slow pace. AR at 1053. Dr. Widlan opined that Lehman "clearly is not able to complete ADL's" and presented in a near decompensated state. AR at 1053. Plaintiff even struggled to complete a simple three-step task. AR at 1053.

Dr. Widlan diagnosed plaintiff with schizoaffective disorder, bipolar type; anxiety disorder, NOS; alcohol abuse, sustained remission; and rated his GAF at 30. AR at 1054. Dr. Widlan opined that plaintiff presented in severe distress; had marked deficits in insight; performed very poorly on MSE tasks; was clearly not able to accept instruction from a supervisor; had very poor social relatedness; was not able to tolerate even simple stress; would not be capable of appropriate attendance, and would be prone to numerous absences; and would not be able to negotiate any type of social stressors, nor would he be capable of persistence that would be necessary for simple employment. AR at 1054.

The ALJ afforded "little weight" to the opinions of Dr. Lemberg and Dr. Widlan "because it appears the doctors heavily relied on the claimant's subjective report of symptoms and limitations, which are not reliable for the reasons discussed above. Furthermore, the doctors were unable to review the CDIU report before making their assessments." AR at 107. Plaintiff contends that neither of these reasons were specific or legitimate. Dkt. 12 at 4.

The ALJ did not err by rejecting the opinions of Dr. Lemberg and Dr. Widlan, as she properly provided specific and legitimate reasons for affording them little weight. The Ninth Circuit has long held that the ALJ may reject a medical opinion that relies heavily on the claimant's self-reports when the ALJ has properly found the claimant to be less than entirely reliable. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The record reflects that Dr. Lemberg and Dr. Widlan both relied heavily on plaintiff's report of his symptoms, in addition to their

ORDER - 10

own observations on mental status examination.  Specifically, Dr. Lemberg stated that her opinion was based on plaintiff's "performance on the mental status exam and presentation today," as well as his own description of his "history."  AR at 920.  For example, she opined that he would have "difficulty retaining instructions from supervisors" based upon his description of "worsening and interfering psychotic symptoms towards the latter years of his employment."  AR at 920.  Thus, the ALJ could reasonably find that Dr. Lemberg substantially relied on plaintiff's self-report to find him incapable of work activities.  AR at 920.  Similarly, Dr. Widlan stated that she found that his "symptom description was credible," and "he presented in a near decompensated state."  AR at 1052.  The ALJ did not err by finding that Dr. Widlan relied not only upon plaintiff's performance on mental status examination, but also to a large extent on his self-reported symptoms.  AR at 1050-54.

The ALJ found strong evidence of malingering in this case, based upon the results of a April and May 2014 Cooperative Disability Investigations Unit ("CDIU") Summary Report of Investigation as well as plaintiff's behavior during the hearing.  AR at 923-49.  Specifically, the CDIU report found that plaintiff displayed no obvious pain related behaviors, or any kind of debilitating behavior.  When plaintiff was unaware he was being observed in relation to his disability application, he appeared to be a very confident, kind, capable individual.  AR at 948.  The ALJ found that "despite the claimant's reports to Dr. Lemberg, a [CDIU] performed in April and May 2014 showed significant inconsistencies between his presentation to his mental health providers and his presentation while being investigated."  AR at 102.  "After the CDIU, the claimant sought out his own consultative psychological evaluation," which was performed by [Dr. Widlan] on July 29, 2015.  The claimant's presentation during this examination was again, completely inconsistent with the observations made during the CDIU."  AR at 102.  The ALJ further found that "the CDIU investigation strongly suggests that the claimant does not

ORDER - 11

have significant functional limits because of either his alleged physical or mental conditions. His presentation during his mental health evaluations also seems entirely inconsistent with his behavior and interactions during the CDIU investigation." AR at 102. The inconsistencies between plaintiff's presentation in the CDIU investigation and his examinations with Drs. Lemberg and Widlan was a specific and legitimate reason, supported by substantial evidence, for the ALJ to give the opinions of Dr. Lemberg and Widlan little weight, as neither of the examiners "have read or reviewed the CDIU investigative report. Consequently, they were unaware of the contradictory information and observations when making their assessments." AR at 103.[3]

### 2. Drs. Collingwood and Robinson

The ALJ noted that in May 2014, State agency psychological consultant John Robinson, Ph.D., opined the claimant had committed fraud when filing his application for benefits. He noted that plaintiff was not a reliable reporter and his claim was not credible. AR at 259. Dr. Robinson summarized plaintiff's medical history and concluded that the medical evidence of record does not establish any psychological impairment that is severe by SSA standards. AR at 260. State agency psychological consultant Cynthia Collingwood, Ph.D. concurred, and stated that the claimant was clearly deceptive with intent to malinger. AR at 287. Dr. Collingwood found that "per [medical evidence of record] and CDIU [report] the claimant appears to be malingering since the L&I ran out. No evidence of psychosis, and some manipulations to obtain narcotics." AR at 287. Finally, she noted that "the claimant's

---

[3] Although the Commissioner concedes that the fact that Drs. Lemberg and Widlan had no opportunity to review the CDIU report, without more, is an insufficient basis for rejecting their opinions, the fact that they relied heavily on plaintiff's less than reliable statements is a specific and legitimate reason.

ORDER - 12

neighbors reported he is a current and active alcoholic," and that his affective disorder and substance abuse disorder were not severe. AR at 102.

The ALJ concluded that "I have given these opinions significant weight in this decision, because they are most consistent with the evidence as a whole and explain the numerous inconsistencies that exist in this case." AR at 107. The ALJ then cited to numerous examples of treatment providers who found no psychotic symptoms, aberrant behavior, evidence of depression, and a normal mood on his medications. AR at 107. The ALJ further noted Dr. Collingwood's statement that even if a bipolar disorder was present, it was manageable with the use of the medication the claimant was taking, Seroquel. AR at 102. The ALJ could reasonably find that these physicians had reviewed the entire medical record, and base her decision that plaintiff did not have a severe mental impairment upon their opinions.

Finally, the ALJ noted that their opinions were most consistent with plaintiff's behavior during the administrative hearing, as well as the CDIU report. AR at 107. The opinions of nonexamining physicians can serve as substantial evidence when they are consistent with independent clinical findings or other evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ discussed the fact that plaintiff's behavior during the hearing was "just as confounding and appeared grossly inconsistent with his presentation with his own providers, as well as how he was perceived during the CDIU investigation." AR at 103. Plaintiff initially presented as severely compromised, to the point of incompetence. AR at 103. He initially did not look toward the bench, until the ALJ suggested that the hearing be postponed, at which time the claimant suddenly was able to respond to the ALJ's questions and stopped responding to the nonexistent stimuli. AR at 103. The ALJ found that "it seems unlikely that an individual responding to internal stimuli of the level suggested by the claimant's initial presentation at the hearing would have a sudden resolution of symptoms, just

because a hearing postponement was suggested. This strongly supports a conclusion the claimant's actions were volitional, and supports Dr. Collingwood's opinion about the facts in this case." AR at 103. Thus, plaintiff has not shown any error by the ALJ in affording "significant weight" to the opinions of Dr. Robinson and Dr. Collingwood, although they are nonexamining physicians who have not had an opportunity to evaluate the claimant in person.[4]

### B. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Plaintiff contends that the ALJ erred by rejecting plaintiff's testimony, as none of the ALJ's reasons for rejecting plaintiff's testimony were clear and convincing. Dkt. 12 at 13. As noted above, however, the ALJ reasonably relied on the opinions of Drs. Robinson and Collingwood in this case (and not the ALJ's own "lay speculation," as plaintiff alleges) to find that evidence of malingering in this case undermined plaintiff's symptom testimony. AR at 101-02, 104. The nonexamining physicians found that plaintiff was "clearly deceptive with intent to malinger," and that he appeared to have been malingering since his worker's compensation benefits expired. AR at 260, 287, 299. As Drs. Robinson and Collingwood diagnosed malingering, the ALJ was not required to provide clear and convincing reasons for rejecting plaintiff's testimony. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As the ALJ adequately supported her finding that plaintiff's mental health symptoms were nonsevere at step two, plaintiff has not

---

[4] Plaintiff's brief includes a lengthy summary of plaintiff's medical records, untethered to any specific assignment of error. Plaintiff asserts in a conclusory fashion that the ALJ erred by ignoring "all of the medical evidence" from treating and examining providers and basing her decision "entirely on the opinions of non-examining physicians, who in turn had based their opinions entirely on a CDIU investigative report" which is not probative evidence of plaintiff's mental illness. Dkt. 12 at 5-8. As discussed above, this argument lacks merit, as the ALJ reasonably weighed the medical opinions in this case and did not rely solely upon the CDIU report. To the extent plaintiff has summarized other providers' treatment notes, the Court finds that he has failed to raise any other assignment of error with specificity, and therefore waives any other argument regarding the medical evidence in this case.

ORDER - 14

shown that the ALJ committed any error in her evaluation of plaintiff's symptom testimony as part of the ALJ's step two analysis. AR at 101-02, 104.

      C.      <u>The ALJ Did Not Err in Evaluating Evidence from "Other Sources"</u>

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Plaintiff's mother, Cheryl Jones, testified at the hearing that she sees her son four times a week at his apartment, and she goes to the store for him. AR at 238. She testified that she calls three or four times every day to check on him. AR at 238-39. When she was asked if plaintiff showed signs of hearing voices before he separated from his wife, she stated, "[h]e always stayed in his room. He didn't come out much." AR at 240. She takes him to his medical appointments, and contacts plaintiff to remind him to take his medication. AR at 240. She testified that when she visits, plaintiff will not talk to her and she has seen him have crying spells. AR at 242. He has no hobbies, no friends, and does not like going out. AR at 243.

ORDER - 15

The ALJ noted that she had considered the testimony of Ms. Jones, and "while her statements may reflect her personal observations of the claimant, the record as a whole does not support a finding of severe mental or physical disorders." AR at 108. The ALJ found that "Ms. Jones is reliant on the claimant's subjective description of his impairments, which are not reliable as discussed above." AR at 108.

The ALJ did not err by finding that Ms. Jones' statement was (1) inconsistent with the record evidence, and (2) similar to plaintiff's discounted symptom testimony. These were specific and germane reasons, supported by substantial evidence, for discounting Ms. Jones' testimony. S*ee Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### D. The Appeals Council Reasonably Determined that the New Findings Submitted After the ALJ's Decision Were Not Material

Plaintiff contends that subsequent to the ALJ's decision, plaintiff submitted new evidence to the Appeals Council which confirms that he has severe impairments. Dkt. 12 at 15-16. Among other records, plaintiff cites to an August 2014 opinion by Curtis G.G. Greenfield, Psy.D., who observed that plaintiff was "jittery," continually looked over his shoulder, and reported seeing spiders on the wall. AR at 203. Dr. Greenfield diagnosed bipolar disorder, severe with psychotic features, and assessed a GAF score of 33. AR at 205. He also assessed numerous severe limitations in plaintiff's ability to function in the workplace. AR at 205. Plaintiff argues that this Court should hold that this new evidence undermines the ALJ's analysis of the medical evidence and plaintiff's testimony at step two. Dkt. 12 at 18.

Plaintiff is incorrect. In light of the ALJ's adoption of the malingering diagnosis in this case, the examinations findings submitted to the Appeals Council following the ALJ's decision do not constitute "new and material" evidence that undermines the ALJ's step two finding. Indeed, the negative examination findings at issue reflect plaintiff's self-reported symptoms of

ORDER - 16

auditory and visual hallucinations, poor eye contact, and speech problems, among other symptoms that were already considered and rejected by Drs. Robinson and Collingwood (and in turn, the ALJ) as evidence of malingering by the plaintiff. AR at 259-61, 287-88, 298-301. As this new evidence was not material to the ALJ's decision, plaintiff's claim fails.

## VIII. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 16th day of January, 2019.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge